39 F.3d 1193
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth HICKS, Defendant-Appellant.
 No. 93-8002.
 United States Court of Appeals, Tenth Circuit.
 Nov. 10, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before TACHA and EBEL, Circuit Judges, and SAM, District Judge.[2]
 
 
 2
 On September 9, 1992, a jury convicted Defendant-Appellant, Kenneth Hicks ("Hicks"), of conspiracy to distribute marijuana, in violation of 21 U.S.C. 846. After a subsequent drug quantity hearing, the district court determined that Hicks was responsible for distribution of 350 to 700 pounds of marijuana and sentenced him, on January 7, 1993, to 66 months of confinement and four years of supervised release. Hicks filed this timely appeal, pursuant to 28 U.S.C. 1291, arguing that the district court erred at trial by (1) admitting evidence seized pursuant to a search warrant for Hicks's residence, (2) admitting statements made by Hicks at the time of the search, (3) admitting hearsay statements made by coconspirators, and (4) denying Hicks's motion for judgment of acquittal based on insufficiency of the evidence. Hicks also argues that the district court erred in determining drug quantities attributable to Hicks for purposes of sentencing. For the reasons discussed below, we AFFIRM the findings of the district court.
 
 
 3
 Hicks was prosecuted as a coconspirator of Ronald Cestnik. During an investigation of drug and money laundering activities involving Cestnik, the government discovered evidence that Hicks was participating with Cestnik in drug distribution as both a marijuana dealer and a driver engaged in transporting marijuana. Based on this information, the state and federal authorities, acting pursuant to a Wyoming state search warrant, gained access to and searched Hicks's home. During the search, the government found large amounts of marijuana, as well as guns, large amounts of cash, and marijuana scales. This physical evidence, along with testimony by government agents and statements by coconspirators, was introduced at trial. Hicks was convicted of conspiracy to distribute marijuana and his sentence reflected a finding by the district court that he was responsible for distribution of 350 to 700 pounds of marijuana.
 
 VALIDITY OF THE SEARCH WARRANT
 
 4
 Hicks first argues that the search warrant was invalid and any evidence seized pursuant to that warrant should be suppressed. Additionally, Hicks argues that any of his statements made during the search should be excluded as "fruits" of the improper search. Hicks claims that the underlying affidavits provided by officers lacked sufficient specific factual support for the warrant, and that the warrant, therefore, was insufficient on its face. We disagree.
 
 
 5
 We review the validity of a search warrant under the same standards applied by the district court. Under this standard, we pay great deference to the issuing magistrate's determination of probable cause and only overturn the magistrate's finding if it lacks a substantial basis for determining that probable cause existed. Illinois v. Gates, 462 U.S. 213, 236 (1983); United States v. Bishop, 890 F.2d 212, 214-15 (10th Cir.1989), cert. denied, 493 U.S. 1092 (1990). A determination of probable cause is sufficient to support the issuance of a search warrant if, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. However, even if probable cause is found lacking, evidence may still be admissible if secured by officers who are acting in "good faith" pursuant to a warrant issued by a neutral magistrate. United States v. Leon, 468 U.S. 897, 920-22 (1984).
 
 
 6
 While the affidavit in support of the warrant in question was somewhat broad in its language, we believe that the government's information that Hicks was involved in the distribution and transportation of marijuana provided a sufficient basis for the magistrate to conclude that there was a fair probability that marijuana, cash, or other evidence would be found at Hicks's home. In addition, even if we had found probable cause lacking in this case, we would nevertheless affirm the district court's admission of the evidence seized from Hicks's home based on the officers' "good faith" actions in obtaining and relying on the warrant. We, therefore, affirm the decision of the trial court to deny Hicks's suppression motion and admit the evidence seized during the search of his home.
 
 
 7
 Inasmuch as we find the government's search and seizure of evidence to have been proper, Hicks's clearly voluntary statements cannot have been tainted by such conduct. We, therefore, find that both the physical evidence found at Hicks's home, as well as Hicks's statements made during the search, were properly admitted by the district court.
 
 ADMISSION OF STATEMENTS BY COCONSPIRATORS
 
 8
 We review the decision of the district court to admit the statements by coconspirators under an abuse of discretion standard. United States v. Wolf, 839 F.2d 1387, 1393 (10th Cir.), cert. denied, 488 U.S. 923 (1988). A coconspirator's statement may be admitted over a hearsay objection, provided the trial judge finds by a preponderance of the evidence that the conspiracy existed, that the declarant and the particular defendant were members of the same conspiracy, and that the statement was made in the course of and in furtherance of the conspiracy. United States v. Perez, 959 F.2d 164, 167 (10th Cir.1992), vacated in part on other grounds, 989 F.2d 1574 (10th Cir.1993) (en banc).
 
 
 9
 In this case, the district court held a "James Hearing," see United States v. James, 590 F.2d 575, 582 (5th Cir.), cert. denied, 442 U.S. 917 (1979), in which it found that the government had sufficiently established the three Perez elements so that the statements should be admitted as those of coconspirators made in furtherance of the conspiracy. Hicks objected a number of times at trial that the government was attempting to introduce evidence beyond those statements proposed at the James Hearing. The trial judge overruled these objections and admitted the statements as within the scope of the James Hearing order. In addition, at the close of evidence, the trial judge further found that "all of the statements of coconspirators that have been admitted in ... [this case], were statements made by coconspirators in the course and in furtherance of the conspiracy." Appellee's App. at 98-99. We, therefore, find that the trial judge made the required findings pursuant to Perez, that those findings were supported by the evidence, and that the coconspirator statements were properly admitted into evidence.
 
 SUFFICIENCY OF THE EVIDENCE
 
 10
 We review sufficiency of the evidence de novo. United States v. Markum, 4 F.3d 891, 893 (10th Cir.1993). In doing so, we must determine whether the evidence, together with reasonable inferences therefrom, is sufficient, when viewed in the light most favorable to the government, such that a reasonable jury could find the defendant guilty beyond a reasonable doubt. Id. To prove a conspiracy, the government must establish that (1) there was an agreement to violate the law, (2) the defendant knew the essential objectives of the conspiracy, (3) the defendant knowingly and voluntarily became part of the conspiracy, and (4) the alleged coconspirators were interdependent. United States v. Evans, 970 F.2d 663, 668 (10th Cir.1992), cert. denied, 113 S.Ct. 1288 (1993). The government may prove these elements directly or circumstantially. Id.
 
 
 11
 At trial, the government put on evidence that Hicks had transported marijuana from Texas to Wyoming for Cestnik, Appellee's App. at 32, 44; had met Cestnik in Rawlins, Wyoming and received marijuana from him, id. at 24-26; had received marijuana from Cestnik and sold it to others, id. at 43-44; possessed large amounts of marijuana and other drug paraphernalia at his house when it was searched, id. at 77-89, 116-27; had met Cestnik in what appeared to be a drug meeting, id. at 65-69; and was listed along with other drug buyers in Cestnik's computer watch memory, id. at 90-95. From this evidence, a reasonable jury could have found that Cestnik and Hicks conspired to violate drug laws; that Hicks knew the essential objectives of the conspiracy, namely to distribute marijuana; that Hicks knowingly and voluntarily joined in this effort to distribute marijuana; and that the actions of Hicks as a dealer and transporter for Cestnik were interdependent with the acts of Cestnik to distribute marijuana. We, therefore, find that the evidence was sufficient for a jury to convict Hicks on the charge of conspiracy to distribute marijuana.
 
 
 12
 EVIDENCE OF DRUG QUANTITIES FOR SENTENCING PURPOSES
 
 
 13
 We review a sentencing court's factual determinations under a clearly erroneous standard. United States v. Lord, 907 F.2d 1028, 1031 (10th Cir.1990). For purposes of sentencing, the government must prove drug quantities attributable to the defendant by a preponderance of the evidence. United States v. Slater, 971 F.2d 626, 638 (10th Cir.1992).
 
 
 14
 In this case, the district court found, based on the trial transcripts of both Hicks and Cestnik, as well as testimony at a separate drug quantity hearing, that Hicks was responsible for 350 to 700 pounds of marijuana. Appellee's App. at 136-39. We believe that the evidence relied on by the district court was sufficient to support its findings as to drug quantities based on a preponderance of the evidence standard. We further believe that the district court was in the best position to determine the credibility of this evidence. We, therefore, affirm the district court's findings as to drug quantities for purposes of sentencing.
 
 CONCLUSION
 
 15
 In summary, we find no reversible error in any of the determinations made by the district court as to the admissibility of evidence, the sufficiency of the evidence, or the drug quantity determinations for sentencing.
 
 
 16
 Accordingly, we AFFIRM.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The Honorable David Sam, District Judge, United States District Court for the District of Utah, sitting by designation